### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

EARL N. STROM, an individual )
)
          Plaintiff, )
vs. )    NO.  CIV-09-0504-HE
)
FIRST AMERICAN PROFESSIONAL )
REAL ESTATE SERVICES, INC., a )
California corporation, )
)
          Defendant. )

### ORDER

Plaintiff Earl N. Strom sued First American Professional Real Estate Services, Inc.

("First American"), the successor corporation of his former employer, in state court alleging

claims arising from the termination of his employment.  The plaintiff asserts breach of

contract and <u>Burk</u> tort[1] claims and also requests specific performance of his employment

agreement.  First American removed the action to federal court and filed a motion to stay

proceedings and compel arbitration. The plaintiff opposes the motion, contending the

arbitration provision in his employment agreement is invalid and unenforceable.

The plaintiff's employment agreement included a Dispute Resolution provision, which

provides in part:

> Any dispute regarding any aspect of this Agreement or any act which allegedly
> has or would violate any provision of this Agreement (an "<u>Arbitrable</u>

---

[1] *The Oklahoma Supreme Court created an exception to its general rule of at-will employment in <u>Burk v. K-Mart Corp.</u>, 770 P.2d 24 (1989), recognizing a cause of action for wrongful discharge in violation of public policy.  The claim is now referred to as a "<u>Burk</u> tort." <u>Wilburn Mid-South Health Dev., Inc.</u>,343 F.3d 1274, 1277 n.2 (10th Cir. 2003).  The plaintiff, however, was not an at-will employee.*

Dispute") will be exclusively submitted to binding arbitration before a neutral arbitrator (the "Arbitrator") ....  There shall be no right to appeal the decision of the arbitrator.

EMPLOYEE AND EMPLOYER AGREE THAT THE FOREGOING ARBITRATION PROCEDURE SHALL BE THE EXCLUSIVE MEANS OF RESOLVING ANY ARBITRABLE DISPUTE AND THAT NO OTHER ACTION WILL BE BROUGHT BY EMPLOYEE IN ANY COURT OR OTHER FORUM.  THIS AGREEMENT IS A WAIVER OF ALL RIGHTS TO A CIVIL COURT ACTION AND APPEAL FOR AN ARBITRABLE DISPUTE; ONLY THE ARBITRATOR, NOT A JUDGE OR JURY, WILL DECIDE SUCH DISPUTE.

Defendant's motion, Exhibit 1,¶12.  The plaintiff focuses on the language: "[t]here shall be no right to appeal the decision of the arbitrator."  *Id.*  He claims that clause denies all access to the courts and, thus, violates the Oklahoma Constitution, statutes, pertinent case law and Oklahoma public policy.  Although he acknowledges the employment agreement has a severability provision, the plaintiff asserts it requires that the entire Dispute Resolution section be severed from the rest of the contract.  He contends the allegedly invalid "no appeal" clause cannot, by itself, be severed.  The plaintiff also argues that, even if the arbitration clause is enforceable,  his whistleblower/public policy tort claim is not subject to mandatory arbitration.[2]

The defendant asserts that, pursuant to the contract's choice of law provision, Oklahoma law, specifically the Oklahoma Uniform Arbitration Act ("OUAA"), 12 Okla. Stat. §§ 1851-81, determines the validity of the arbitration clause.  The defendant argues in

_____

[2]*Contrary to the defendant's assertion in its reply brief, the plaintiff argues that only his public policy/whistleblower claim falls outside the scope of the arbitration clause, not all his claims.*

its motion to stay that, while the OUAA prohibits the waiver of certain rights to appeal, the prohibitions pertain solely to appeals from an order or judgment of a court. The OUAA does not, the defendant maintains, preclude the parties from waiving the right to appeal the arbitrator's decision. In its reply brief the defendant modifies its argument, contending that the waiver in the agreement does not extend to the "statutory rights to appeal specifically included in the OUAA," such as "fraud, corruption, arbitrator misconduct, mathematical errors, and excess of power ...." Defendant's reply, p. 2.

If, however, the court should conclude that some portion of the language in the arbitration clause is invalid, the defendant contends that it can be severed, with the remainder of the clause still being enforceable. The defendant also disputes the plaintiff's characterization of the arbitration clause as being narrow, asserting that it is broad and that all the plaintiff's claims fall within its scope.

<u>Analysis</u>

Congress enacted the Federal Arbitration Act ("FAA")[3] to overcome judicial resistance to arbitration. <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 443 (2006). However, while there is liberal federal policy favoring arbitration agreements, <u>Cummings v. FedEx Ground Package System, Inc.</u>, 404 F.3d 1258, 1262 (10th Cir. 2005), "several key assumptions [] undergird that policy," including the right to limited judicial review. <u>Hoeft v. MVL Group, Inc.</u>, 343 F.3d 57, 63 (2d Cir. 2003), *overruled on other*

---

[3]*Federal Arbitration Act.  9 U.S.C. §§ 1-16.*

grounds by Hall St. Assocs. v. Mattel, Inc., ___ U.S. ___ (2008). "It is in part because arbitration awards are subject to minimal judicial review that federal courts voice such strong support for the arbitral process." *Id.* Both the FAA and the OUAA "prescribe[] several grounds for vacating arbitration awards that although narrow are nevertheless important." *Id. See* 9 U.S.C. § 10; 12 Okla. Stat .§ 1874.[4] The Second Circuit has held that those grounds "represent a floor for judicial review of arbitration awards below which parties cannot require courts to go, no matter how clear the parties intentions." Hoeft, 343 F.3d at 64.

The court in Hoeft was considering whether parties could contract to "both authorize a federal court to enter a judgment confirming an arbitral award and divest that court of the authority to review the substance of the award for manifest disregard of the law."[5] *Id.* at 63.[6] Here, the question of the availability of judicial review is presented in a different

---

[4]*Both acts also specify ground for correcting or modifying arbitration awards. 9 U.S.C. §11; 12 Okla. Stat. § 1875.*

[5]*Several circuits had held that the Supreme Court in Wilko v. Swan, 346 U.S. 427, 436-37 (1953) supplemented the grounds set out in the FAA for vacating or modifying an arbitration award with an additional ground – manifest disregard of the law. The Supreme Court held in Hall St. Assocs. v. Mattel, Inc., ___ U.S. ___ (2008) that the grounds for judicial review listed in the FAA are exclusive. Hall Street overruled Hoeft to the extent the Second Circuit concluded parties could not, by private agreement, authorize a federal court to enter a judgment confirming the arbitration award yet preclude the court from reviewing it for manifest disregard of the law. The Supreme Court's decision did not, though, affect the underlying rationale for the decision – that "[i]n enacting § 10(a), Congress impressed limited, but critical, safeguards onto [the arbitration] process, ones that respected the importance and flexibility of private dispute resolution mechanisms, but at the same time barred federal courts from confirming awards tainted by partiality, a lack of elementary procedural fairness, corruption, or similar misconduct." Hoeft, 343 F.3d at 64.*

[6]*"Arbitration awards are not self-enforcing." Hoeft, 343 F.3d at 63. See 9 U.S.C. § 9; 12 Okla. Stat. § 1876.*

4

context.  Rather than being before the court seeking confirmation of an award, the parties are seeking a determination of whether the plaintiff can be compelled to arbitrate his claims. However, the court concludes that, despite that difference in procedural posture, the Second Circuit's rationale and its conclusion that "judicial review is not a creature of contract, and the authority of a federal court to review an arbitration award – or any other matter – does not derive from a private agreement" – applies here.  *Id.* at 66.   Parties seeking judicial enforcement of an arbitration provision or "to enforce arbitration awards through federal-court confirmation judgments may not divest the courts of their statutory and common-law authority to review both the substance of the awards and the arbitral process for compliance with § 10(a) ...."  *Id.* .  Therefore the "no appeal" clause, to the extent it attempts to preclude any court access, is invalid.  *See generally* " MACTEC, Inc. v. Gorelick, 427 F.3d 821, 827-30 (10th Cir. 2005) (noting fundamental difference between "contractual provisions limiting the right to appeal from a district court's judgment confirming or vacating an arbitration award," which are permissible, and the non-appealability clause at issue in Hoeft, which "applied to a district court's review of the arbitrator's award").

That conclusion does not, though, mandate that "the entire 'Dispute Resolution' section [] be severed from the Employment Agreement."  Plaintiff's response, p. 9. *See e.g.,* Booker v. Robert Half Int'l, Inc., 413 F.3d 77 (D.C.Cir. 2005) (district court properly severed invalid punitive damages bar and enforced remainder of arbitration clause when contract

contained severability clause and only one discrete illegal provision).[7]   The contract included

a severability clause, which provides that "[i]f any provision of this Agreement is held

invalid or unenforceable, the remainder of this Agreement shall nevertheless remain in full

force and effect."   Defendant's motion, Exhibit 1,¶20.   "Severing [just] the [no-appeal]

clause is consistent with the terms of the contract, the intent of the parties, [Oklahoma]

contract law,[8] and the FAA's policy favoring the enforcement of arbitration agreements."

Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 683 (8th Cir. 2001).   See Hadnot v. Bay,

Ltd., 344 F.3d 474 (5th Cir. 2003) (unenforceable restriction on punitive damages severed

and parties ordered to proceed to arbitration); Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 219-

23 (3d Cir. 2003) (unenforceable attorney's fees and payment of costs provisions severed and

parties required to proceed to arbitration).   "The purpose of the arbitration provision is to

settle any and all disputes arising out of the employment relationship in an arbitral forum

---

[7]*The D.C. Circuit in Booker considered the plaintiff's policy argument that "responding to illegal provisions in arbitration agreements by judicially pruning them out leaves employers with every incentive to 'overreach' when drafting such agreements," noting that it helped persuade some circuits to strike arbitration clauses in their entirety. Booker, 413 F.3d at 84. The appellate court concluded, however, that severing the unenforceable clause was appropriate in that case as the agreement contained a severability clause, there was only one discrete illegal provision in the agreement, and, by enforcing the arbitration provision the trial court was "faithful to the federal policy which requires that we rigorously enforce agreements to arbitrate." Id. at 85-86 (internal quotation omitted.). See also Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 682 n.7 (8th Cir. 2001) (noting that employer lost many of the advantages of arbitration because of dispute over improper/invalid terms in arbitration agreement and that "these forfeitures belie the argument that severance encourages employers to insert problematic terms that likely will result in litigation").*

[8]*See City of Bixby v. State ex rel. Dep't of Labor, 934 P.2d 364, 370 (Okla. Civ. App. 1996) (enforceability of contractual provisions remaining after invalid provision is severed depends upon parties' expectations. "The entire contract is unenforceable if the invalid contractual provision is an essential part of the agreement and the parties would not have agreed absent that provision.").*

rather than a court of law." <u>Hadnot</u>, 344 F.3d at 478. Severing the prohibition or restriction "serves to expand the scope of arbitration rather than reduce or impair it, thereby freeing that [arbitration] provision to fulfill its intended function." *Id. See* <u>Gannon</u>, 262 F.3d at 681 (invalid punitive-damages clause could be severed "without disturbing the primary intent of the parties to arbitrate their disputes").[9]

Therefore, to the extent the no appeal clause is invalid, the court concludes it can be severed from the employment agreement. However, the court does not necessarily agree with the plaintiff's interpretation of the challenged language. It can be construed merely as a waiver of the right to a "civil court action and [an] appeal" from such an action. *See generally* <u>Bank of Wichitas v. Ledford</u>, 151 P.3d 103, 111 (Okla. 2006) ("The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made. In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning."). In other words, the parties agree to forego their right to have the merits of their claims decided by a judge or jury, but do not otherwise restrict their ability to appeal the award as provided by the OUAA or the FAA.[10] *See*

_____

[9]*The cases the plaintiff cites to demonstrate that the entire Dispute Resolution section must be severed are inopposite. For example, while the Supreme Court stated in* <u>Buckeye Check Cashing</u>, *546 U.S. at 445, that "an arbitration provision is severable from the remainder of the contract," the Court did not address the issue of whether invalid portions of an arbitration clause could be severed and the remainder of the clause enforced. The issue in that case was "whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality." Id. at 442.*

[10]*The Tenth Circuit stated in* <u>Youngs v. American Nutrition, Inc.</u>, *537 F.3d 1135, 1140 n.4 (10th Cir. 2008), that it had previously "noted the parties' stipulation for the application of state law in their contract; noted that some courts have held that, notwithstanding the parties' insertion*

Rollings v. Thermodyne Indus., Inc., 910 P.2d 1030, 1033 (Okla. 1996) (OUAA "provides for judicial review, albeit limited," stating the "grounds which may serve as a basis to vacate the award by a reviewing court").  So interpreted, the provision is valid.  *See* Ledford, 151 P.3d at 111 ("A contract should receive a construction which makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties.).

Regardless, as the no-appeal provision, if invalid, can be severed and the remainder of the arbitration provision left intact, the court must now determine the scope of the arbitration clause.  The plaintiff claims the parties agreed to arbitrate disputes regarding the agreement – contract-based claims –  not tort claims based on Oklahoma public policy.  The defendant contends all the plaintiff's claims are subject to arbitration.

When the parties dispute whether an arbitration clause applies to a particular claim the court must "examine 'the scope of that agreement and then determine whether [plaintiffs'] claims fall within its scope.'"  Cummings, 404 F.3d at 1261 (quoting Nat'l Am. Ins. Co. v. SCOR Reinsurance Co., 362 F.3d 1288, 1290 (10th Cir.2004)).  The pertinent

---

*of a choice-of-law provision in their agreement, the Federal Arbitration Act applies if the contract evidences a transaction involving interstate commerce[ ]"; and concluded that [it] need not decide which law governed because [it] saw no difference in state and federal law on the issues raised in the case."  Because the court "found no significant differences between Utah law and federal law on the issues involved in [the] appeal" in Youngs, the court concluded it had "no occasion to grapple with questions about which law to apply."  Id. at 1140.  As both parties cite to Oklahoma law here and the court finds no significant differences between Oklahoma law and federal law on the issues presented by the defendant's motion, the court "will cite to both state and federal authorities herein, assuming without deciding in each instance that it would make no difference if [it was] to consult state instead of federal law or vice-versa."  Id.*

inquiry involves three steps:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Id.* (quoting Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001)).

In Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72 (2d Cir. 1998) the Second Circuit considered a clause which made arbitrable "'[a]ny dispute controversy or claim arising under or in connection'" with the plaintiff's employment agreement.  *Id.* at 76.  The court concluded that provision "represent[ed] the prototypical broad arbitration provision." *Id.* In Brown v. Coleman Co., Inc., 220 F.3d 1180 (10th Cir. 2000), the Tenth Circuit reviewed an arbitration provision which stated that "'all disputes or controversies arising under or in connection with this Agreement ... will be settled exclusively by arbitration.'"  *Id.* at 1184. The court found the  clause was "the very definition of a broad arbitration clause as it covers not only those issues arising under the employment contract, but even those issues with any connection to the contract." *Id.*  The arbitration clause at issue here provides that "[a]ny dispute regarding any aspect of this Agreement or any act which allegedly has or would violate any provision of this Agreement (an 'Arbitrable Dispute') will be exclusively

submitted to binding arbitration ...."  As it is similar in scope to the clauses considered in

Oldroyd and Brown, the court concludes the arbitration provision in the plaintiff's

employment agreement is broad.  *Cf.* Cummings. 404 F.3d at 1262 (clause, which was "not

the type of broad provision that refer[s] all disputes arising out of a contract to arbitration"

was narrowly drawn) (internal quotation omitted)).  Consequently, there is a presumption that

the plaintiff's public policy claim is arbitrable.  See Cummings, 404 F.3d at 1262; Brown,

220 F.3d at 1184.[11]

To determine whether the plaintiff's public policy claim falls within the scope of the

arbitration clause the court must focus "on the factual allegations in the complaint rather than

the legal causes of action asserted."  Oldroyd, 134 F.3d at 76.  The plaintiff alleges that the

defendant terminated his "employment for cause on the pretextual basis that he had failed to

internally report" a coworker's illegal activities and had shared some surveys with Robert

Outland, described in the petition as a consultant for the defendant and former owner of its

predecessor companies.  Petition, ¶¶ 62;82. The termination letter, attached to the petition,

identifies the specific contract provisions the defendant allegedly relied upon in making its

decision to discharge the plaintiff.  Petition, Exhibit H ("First American is discharging [the

plaintiff] from employment and is terminating [his] Employment Agreement for cause, as

provided for in Sections 9(a)(v), 9(a)(vii), and 11."

---

[11]*The plaintiff offered no evidence to rebut the presumption.  He also did not persuasively argue that the  parties did not intend for the arbitration clause to encompass a public policy tort claim, simply stating that he "did not agree to arbitrate his whistleblower and* Burk *tort claims." Plaintiff's response pp. 11-12.*

Clearly, the plaintiff's public policy claim " touches the contract." <u>Brown</u>, 220 F.3d at 1184.  The claim raises the issue of whether the plaintiff was terminated because, as asserted by the defendant, he violated the employment agreement or because, as asserted by the plaintiff, he was retaliated against for whistleblowing.  *See* <u>Oldroyd</u>, 134 F.3d at 77 (When more than half of the employment contract relates to the subject of termination from employment, addressing "such matters as what constitutes 'cause' for termination, benefits to be provided after termination, [and] notice requirements for termination, "there can be no doubt that a retaliatory discharge claim touches matters covered by the employment contract").  The court concludes the plaintiff's whistleblower claim is arbitrable.

As the court has found that the arbitration clause is enforceable and that all the plaintiff's claims are arbitrable, the defendant's motion will be granted. The FAA provides that if an issue is referable to arbitration under a written arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had ...." 9 U.S.C. § 3.  Despite the statutory language some circuit courts have held that dismissal is appropriate when all claims are referred to arbitration.  *E.g.* <u>Choice Hotels Internat'l, Inc. v. BSR Tropicana Resort, Inc.</u>, 252 F.3d 707, 709-10 (4th Cir. 2001).  The court concludes, however, that "under <u>Adair Bus Sales, Inc. v. Blue Bird Corp.</u>, 25 F.3d 953, 955 (10th Cir. 1994),[12] and in light of the plain language of the statute, that the proper result

---

[12]*The Tenth Circuit held in <u>Adair</u> that when a defendant had moved for a stay pending arbitration under 9 U.S.C. § 3, the court committed a procedural error in dismissing the action. <u>Adair</u>, 25 F.3d at 955 ("The proper course, therefore, would have been for the district court to grant Defendant's motion and stay the action pending arbitration.").*

of defendant's motion is a stay." <u>Griggs v. Check 'N Go of Oklahoma, Inc.</u>, 2006 WL 3544338 at *1 (W.D.Okla. Nov. 29, 2006).

Accordingly, defendant First American's motion to stay and compel arbitration [Doc. #4] is **GRANTED**.  The plaintiff's claims against the defendant will be stayed pending arbitration.  The Clerk of Court is directed to administratively close this case in his records without prejudice to the right of a party to move to have the case reopened upon completion of the arbitration proceedings or for another proper purpose.  If a motion to reopen is not filed within **thirty (30) days** of completion of the arbitration proceeding, this action shall be deemed dismissed with prejudice.

**IT IS SO ORDERED**.

Dated this 24th day of July, 2009.

JOE HEATON
UNITED STATES DISTRICT JUDGE